**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ROBERT MORTON, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-2558 |
| | § | |
| AMERICAN CAPITAL STRATEGIES | § | |
| LIMITED, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The plaintiffs, nine shareholders in 8350 Mosley Corporation, f/k/a Aeriform Corporation, f/k/a IWECO, (the "Corporation"), filed suit in state court against the Corporation, its majority shareholder, American Capital Strategies Limited ("ACS"), and four individuals who were part of the corporate defendants' management. The plaintiffs alleged that the defendants breached fiduciary duties, violated the Texas securities laws, and committed fraud. As a result, according to the plaintiffs, the stock they had acquired through the Corporation's employee stock ownership plan ("ESOP") became worthless. The defendants timely removed on the basis of complete preemption under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461. (Docket Entry No. 1). The plaintiffs moved to remand, the defendants responded, and the plaintiffs replied. (Docket Entry Nos. 13, 16, 18).

Based on the notice of removal; the state-court petition; the motion to remand, response, and reply; and the relevant law, the court denies the motion to remand. The court finds that many of the plaintiffs' claims are completely preempted by ERISA § 502(a). As to the claims that are not

preempted the court exercises supplemental jurisdiction over them. The plaintiffs may replead by July 18, 2014.

The reasons for this ruling are explained in detail below.

## I. Background

IWECO was a Union Carbide subsidiary that manufactured and distributed industrial gases. (Docket Entry No. 1-5 at ¶ 21). In October 1990, IWECO employees purchased the Corporation from Union Carbide through an ESOP set up for IWECO employees and their beneficiaries. The ESOP allowed IWECO employees to accumulate stock for retirement and provided additional benefits to the employees and their beneficiaries in the event of death, disability, or employment termination. (*Id.* ¶ 22). In 1994, IWECO amended the ESOP, with IRS approval, retroactive to 1990. (*Id.*).

In 1996, IWECO changed its name to Aeriform Corporation. (*Id.* ¶ 23). Aeriform's management began making acquisitions financed by borrowing from ACS. The plaintiffs allege that the loan agreements between Aeriform and ACS called for above-market interest rates for ACS. (*Id.*). ACS acquired warrants to Aeriform stock under the loan agreements. (*Id.*). Certain members of Aeriform and ACS management also received large bonuses for the loans. (*Id.*). ACS exercised the warrants, becoming Aeriform's majority shareholder, and began appointing members to the Aeriform board of directors. (*Id.*). By 2004, ACS controlled Aeriform's board.

The plaintiffs' state-court petition alleged that the debt accumulation, the large bonuses, and the high-interest loans caused their Aeriform stock to drop from $37.50 per share in 1998 to $0.03 in 2004. (*Id.* ¶ 24). The plaintiffs allege that they were unaware of the extent of the stock-price

decline until April 12, 2006, when they received their ESOP account statements for the plan year ending on September 30, 2004. (*Id.*).

In 2006, the Corporation notified the plaintiffs that the IRS had formally approved terminating the ESOP. The Corporation issued stock certificates to the plaintiffs. (*Id.*). In 2007, the ACS-controlled board sold the Corporation's assets to Airgas Corporation for $90 million. That money was used to repay the Corporation's debt to ACS. (*Id.*). In a letter dated July 15, 2009, Karl Joe Thoma, ACS's Chief Financial Officer, sent a letter to the plaintiffs and others who had received the stock certificates stating that the Corporation would be dissolved. (*Id.* § 25). The letter stated that all the Corporation's debts would be paid in priority order, leaving no assets to distribute to the shareholders. (*Id.*). The plaintiffs claim that many of them did not receive the letter until early 2010. The plaintiffs allege that the defendants "failed to exercise their fiduciary duties and allowed the company assets to be wasted without appropriate action or oversight," with the result that the Corporation's "stock was . . . worthless and the plaintiff shareholders lost their entire retirement investment." (*Id.*).

The plaintiffs asserted Texas state-law claims for breach of fiduciary duty, violations of the Texas securities statute, and common-law fraud. The fiduciary-duty claim broadly alleged that the defendants breached their duties to speak truthfully and not to mislead, including an "affirmative duty to disclose to the investing fiduciaries material facts related to the sale of the company, including an accounting of where the money went." (*Id.* ¶¶ 26, 33). As to the Texas Securities Act claim, the plaintiffs alleged that: the defendants failed to disclose Aeriform's financial condition between 1998 and 2004 and that ACS began running the company in 2004; ACS, Thoma, and "other fiduciaries" failed to notify Aeriform employees of the September 30, 2004 stock value until April

3

20, 2006; the defendants misrepresented the stock's value and the Corporation's financial condition; and the defendants generally failed to keep the shareholders informed. (*Id.* ¶¶ 34 a.-d.). The plaintiffs alleged that these misstatements and omissions were material. Finally, as to the common-law fraud claim, the plaintiffs alleged that from 2004 to the present, the defendants falsified information and misled the plaintiffs about the terms and consequences of the buyout, merger, and sale.

The defendants removed on the basis that ERISA preemption created federal-question jurisdiction. The defendants emphasized in their notice of removal and in response to the remand motion that in 2012, the plaintiffs had sued the same defendants in federal court under ERISA. The complaint in *Morton v. Am. Cap. Strategies Ltd.*, *et al.*, 4:12-cv-2075 (S.D. Tex. 2012), alleged the same facts as the state-court petition filed in this removed case in 2013. In the 2012 federal complaint, the plaintiffs stated that they were suing the defendants for "breaching their fiduciary duties under the Employment Retirement Income Security Act of 1974." (Docket Entry No. 1-10 ¶ 3). The 2012 complaint stated that federal jurisdiction was proper under ERISA; that ACS was a "party in interest pursuant to ERISA within the meaning of 29 U.S.C. ¶ 1002(14)," that Aeriform was a "party in interest pursuant to ERISA within the meaning of 29 U.S.C. ¶ 1002(14)," and sought to hold the defendants liable for breaches of ERISA fiduciary duties under ERISA § 502. (*Id.* ¶¶ 39, 45, 51). The plaintiffs filed a notice of voluntary dismissal of the 2012 federal complaint, without prejudice, after the defendants moved to dismiss based on Federal Rule of Civil Procedure 12(b)(6). In the 2013 state-court petition, the plaintiffs deleted the references to ERISA, the references to the themselves as ESOP plan participants, and the references to the defendants as ESOP trustees.

Each of the claims asserted in the state-court petition is examined in light of the parties' arguments and the law.

## II.     The Legal Standard for ERISA Removal

"A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)). "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Id.* (quotation and citations omitted). "To determine whether jurisdiction is present for removal," the court considers "the claims in the state court petition as they existed at the time of removal." *Id.* (citation omitted). The Fifth Circuit construes the removal statute in favor of remand and construes ambiguities against the removing party. *Id.*

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. 28 U.S.C. § 1441(a). The district courts have original jurisdiction in federal-question cases which arise under the laws of the United States. 28 U.S.C. § 1331. "Ordinarily, determining whether a particular case arises under federal law turns on the well-pleaded complaint rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quotation omitted). Whether the complaint raises a federal question "'must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.'" *Id.* (quoting *Taylor v. Anderson*, 234 U.S. 74, 75 (1914)). A federal defense does not ordinarily create federal-question jurisdiction. *See Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908).

5

The well-pleaded complaint rule has an exception: "'when a federal statute wholly displaces the state-law cause of action through complete preemption,' the state claim can be removed." *Id.* (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). "This is so because '[w]hen the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" *Id.* at 207–08 (quoting *Anderson*, 539 U.S. at 8). "ERISA is one of these statutes." *Id.* at 208.

ERISA "subjects to federal regulation plans providing employees with fringe benefits." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). It is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Id.* (citations omitted). This "'comprehensive legislative scheme' includes 'an integrated system of procedures for enforcement.'" *Davila*, 542 U.S. at 208 (quoting *Ma. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1984)). "This integrated [civil] enforcement [provision], ERISA § 502(a), 29 U.S.C. § 1132(a), is a distinctive . . . and essential [feature] to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Id.* "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Id.* at 209 (citations omitted). "The preemptive force of ERISA §502(a) is still stronger. . . . [T]he ERISA civil enforcement [provision] is one of those provisions with such extraordinary preemptive power that [it] converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* (citations omitted). The civil-enforcement provision, "completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action." *Ellis v. Liberty Life Assur. Co. of Bos.,*

394 F.3d 262, 275 n.34 (5th Cir. 2004) (citing *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999)); *see also Haynes v. Prudential Health Care*, 313 F.3d 330, 333 (5th Cir. 2002) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)).

**III.     Analysis**

From 1990 to August 2006, the plaintiffs' investment was under the ESOP. In August 2006, the ESOP was terminated and the plaintiffs were issued stock certificates. "An ESOP is a form of employee benefit plan designed to invest primarily in securities issued by its sponsoring company." *Donovan v. Cunningham*, 716 F.2d 1455, 1458 (5th Cir. 1983) (citing 29 U.S.C. § 1107(d)(6)). "As is true of all employee benefit plans covered by ERISA, ESOPs are subject to an impressive and somewhat bewildering array of rules and regulations governing their substance and administration, as well as their eligibility for favorable tax treatment." *Id.* The Fifth Circuit has provided a "thumbnail sketch of ESOP mechanics":

> An employer desiring to set up an ESOP will execute a written document to define the terms of the plan and the rights of beneficiaries under it. 29 U.S.C. §1102(a). The plan document must provide for one or more named fiduciaries "to control and manage the operation and administration of the plan." *Id.* at § 1102(a)(1). A trust will be established to hold the assets of the ESOP. *Id.* § 1103(a). The employer may then make tax-deductible contributions to the plan in the form of its own stock or cash. If cash in contributed, the ESOP then purchases stock in the sponsoring company, either from the company itself or from existing shareholders. Unlike other ERISA-covered plans, an ESOP may also borrow in order to invest in the employer's stock. In that event, the employer's cash contributions to the ESOP would be used to retire the debt.

*Id.* at 1459. The plaintiffs' state-court petition makes clear that their interest in the Corporation's stock was through the ESOP until August 2006, when the ESOP was terminated and the stock

certificates were issued and distributed. The plaintiffs' petition does not specify details about the ESOP when they were plan participants.

The defendants argue that the plaintiffs' claims primarily involve conduct and relationships during the period that the plaintiffs were ESOP participants. Such conduct and relationships are, according to the defendants, "regulated exclusively" by ERISA's civil-enforcement provision and completely preempt the state-law claims. (Docket Entry No. 16 at 7). The plaintiffs respond that their claims fall outside ERISA because the ESOP was terminated in 2006, when they became shareholders, and because their claims include the sale of the Corporation's assets to Airgas for $90 million and the distribution of those proceeds to ACS.

### A. The Claim for Breach of Fiduciary Duty

The state-court petition alleged that ACS and the individual defendants were fiduciaries who breached their duties to disclose facts material to the investment related to the Corporation's sale and for failing properly to notify the plaintiffs about the stock value. Most of the facts alleged throughout the body of the state-court petition involve acts that occurred while the investments were under the ESOP. The alleged acts of mismanagement before August 2006 included making high interest-rate loans, paying excessive bonuses, accumulating excessive debt, and terminating the ESOP. The petition makes clear that the stock price fell from $37.40 in 1998 to $.03 in 2004, two years before the ESOP was terminated and the plaintiffs received their stock certificates. The state-court petition alleges that the mismanagement that drove the stock price down was mismanagement of the Corporation itself, rather than of the ESOP. The petition also alleges that the mismanagement continued after the ESOP terminated:

> In 2007, the Board of Directors which was controlled by [ACS] sold the assets of the corporation to Airgas Corporation for approximately

> $90 [million]. The proceeds of the sale went entirely to [ACS] for repayment of debt, interest and other obligations – resulting in a windfall profit to ACS while the shareholders were left with worthless stock. The defendants failed to exercise their fiduciary duties and allowed the company assets to be wasted without appropriate action or oversight.
>
> Sometime on or around July 15, 2009, Plaintiff shareholders were notified in a letter written by [Thoma], of the final dissolution of Aeriform. Although dated July 15, 2009, the letter was [not] received by many of the plaintiff shareholders until 2010. The letter also informed Plaintiff shareholders that as a result of the dissolution, all claims against the company were to be paid in full in order of priority. Importantly, the letter went on to state that there were insufficient funds to satisfy all claims against the company and thus no assets were left to be distributed to Plaintiffs as stockholders of the Corporation. As a direct result of the action of the Defendants, the company stock was allegedly worthless and the plaintiff shareholders lost their entire retirement investment. Many of the employees had worked more than 20 years at the company and invested in company stock – the Plaintiff shareholders were left with nothing.

(Docket Entry No. 1-5 ¶¶ 24–25). The state-court petition alleged breach of fiduciary duties against the defendants for those events:

> Defendants had an affirmative duty to disclose to the investing fiduciaries material facts related to the sale of the company, including an accounting of where the money went. Instead, the defendants oppressed the minority shareholders and provided no information regarding the sale of the company – other than notifying them that their shares were now worthless.

(Docket Entry No. 1-5 ¶ 33).

Defendants maintain that these allegations are thinly disguised claims that ERISA fiduciaries mismanaged the ESOP and focus on the alleged acts that occurred before 2006. "Section 502(a)(2) provides a cause of action for injuries caused by violations of ERISA § 509," which focuses on "fiduciary breaches that cause harm to a plan as a whole." *Matassarin v. Lynch*, 174 F.3d 549, 565–66 (5th Cir. 1999). While the state-court petition states that the shareholders "lost their entire

9

retirement investment" and includes factual allegations that took place when the ESOP operated, the breach of fiduciary duties allegation and the state-court petition's factual allegations do not mention mismanagement of the ESOP. Instead, the petition alleges corporate mismanagement in the events that occurred before and after the ESOP terminated.

The Fifth Circuit has discussed at length the "hats" an employer might wear in deciding to take an action and whether a particular action falls inside or outside ERISA. *See, e.g., Kopp v. Klein*, 722 F.3d 327, 333–35 (5th Cir. 2013); *Izzarelli v. Rexene Prods. Co.*, 24 F.3d 1506, 1524–25 (1994). An employer acts as an ERISA fiduciary "'only when and to the extent that [it] function[s] in [its] capacity as plan administrator[], not when [it] conduct[s] business that is not regulated by ERISA.'" *Izzarelli,* 24 F.3d at 1524 (alterations original) (quoting *Hozier v. Midwest Fasteners, Inc*, 908 F.2d 1155, 1158 (3d Cir. 1990)). "Business not regulated by ERISA" is a broad concept and has been even "held to include decisions to . . . terminate ERISA plans." *Id.* (aggregating cases). Employers "'can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries.'" *Kopp*, 722 F.3d at 334 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000)). The plaintiffs' state-court petition in this case contains no allegations that an ERISA fiduciary mismanaged the ESOP as a plan administrator. The claim for breach of fiduciary duties is not preempted.

The Sixth Circuit has provided persuasive analysis that supports this conclusion. *See Husvar v. Rapoport*, 430 F.3d 777 (6th Cir. 2005). In *Husvar*, all of the plaintiffs "received shares of company stock in conjunction with their participation in the [ESOP.]" *Id.* at 779. "A close examination of the plaintiffs' complaint reveal[ed] that nowhere in that document [did] the former employees allege that the defendants themselves mismanaged any fund designated as a pension

benefit plan for company workers." *Id.* at 782. The plaintiffs' complaint did not challenge the decisions or actions of plan fiduciaries. Instead, the complaint "merely question[ed] the propriety of certain business decisions made by the company's board of directors." *Id.* "Although those decisions, without question, affected the value of the company stock that comprised the employees' benefit plan assets, that fact alone [did] not transform a state-law breach of fiduciary duty claim into a federal ERISA action." *Id.* The defendants' attempts to distinguish this case are not persuasive.

### B.     The Texas Securities Act and Common-Law Fraud Claims

The plaintiffs' state-court petition asserted violations of the Texas Security Act and common-law fraud based on alleged misrepresentations and omissions between 1998 and April 2006, when the ESOP was in place. The allegedly false and misleading disclosures from "2004 to present" are also the basis for the common-law fraud claim.

ERISA has its own reporting and disclosure requirements, 29 U.S.C. §§ 1021–1031, which are "crucial components of" its regulatory scheme. *See Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). When those requirements are not met, ERISA's civil enforcement provision applies. 29 U.S.C. § 1132(a)(1)(A).

The state-law claims asserting that the defendants failed to disclose or misrepresented material information to the plaintiffs when they were ESOP participants are completely preempted by § 502(a) of ERISA. *See Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1219 (5th Cir. 1992) ("Superimposing state law fraud standards on the elaborate ERISA provisions governing the content and timing of notice of plan provisions and amendments would undercut the goal of uniform national regulation in the manner section 514(a) seeks to prevent."); *see also Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 84 (3d Cir. 2012) ("This type of analysis–concerning the accuracy of statements

made by an alleged [state-law] fiduciary to plan participants in the course of administering the plans–sits within the heartland of ERISA.").

Because the court finds that the Texas Security Act and the Texas common-law fraud claims are completely preempted, the court will exercise supplemental jurisdiction over the remaining state-law breach of fiduciary duty claims. *See Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 947 (5th Cir. 1995); *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1017–18 & n.3 (5th Cir. 1993).

Based on the state-court petition and briefs, the court denies the motion to remand. The plaintiffs may replead no later than July 18, 2014.

       SIGNED on June 6, 2014, at Houston, Texas.

                                          Lee H. Rosenthal
                                     United States District Judge